AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

> **FILED**
>
> 4/29/2021
>
> CLERK, U.S. DISTRICT COURT
> SOUTHERN DISTRICT OF CALIFORNIA
> BY      vyc                    DEPUTY

In the Matter of the Search of                )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*  )          Case No.    21MJ8357
                                               )
One Gold/Black iPhone Cellular Telephone (Clear Case)   )
Phone Number: 760-675-5901                     )
IMEI: Unknown                                  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 and 846 | Possession of a Controlled Substance With Intent to Distribute; Conspiracy to Commit Same |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Task Force Officer Andy Mange, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Task Force Officer Andy Mange, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:    4/29/21

_____
*Judge's signature*

City and state:  El Centro, California        HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Black iPhone Cellular Telephone (Red/Black Case)
>
> Phone Number: 760-492-0145
>
> IMEI: Unknown
>
> ("Target Device #1")

> One Gold/Black iPhone Cellular Telephone (Clear Case)
>
> Phone Number: 760-675-5901
>
> IMEI: Unknown
>
> ("Target Device #2")

The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 16, 2020, up to and including December 16, 2020:

    a.    tending to indicate efforts to transport and distribute controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances, or some other federally controlled substance, within the United States and destinations beyond;

    d.    tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.

**AFFIDAVIT**

I, Task Force Officer Andy Mange, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>     One Black iPhone Cellular Telephone (Red/Black Case)
>
>     Phone Number: 760-492-0145
>
>     IMEI: Unknown
>
>      ("Target Device #1")
>
>
>     One Gold/Black iPhone Cellular Telephone (Clear Case)
>
>     Phone Number: 760-675-5901
>
>     IMEI: Unknown
>
>      ("Target Device #2")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Julian MAGANA and Francisco PEREGRINA ("Defendants") for possession with intent to distribute approximately 40.056 kilograms (88.308 pounds), of a mixture and substance containing a detectable amount of cocaine and 6.826 kilograms (15.048 pounds) of a mixture and substance containing a detectable amount of heroin.[1] The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the

---

[1] This Court had previously signed a Search Warrant for the **Target Device** on December 23, 2020. The time limit for execution of the Search Warrant expired on March 23, 2021 and the search was not completed within that time frame. Therefore, this Affiant is now requesting a Search Warrant based on identical probable cause in order to execute the search

1   Target Device, it does not contain all the information known by me or other agents
2   regarding this investigation. All dates and times described are approximate.

### BACKGROUND

4   3.   I am a sworn full-time Probation Officer with the Imperial County Probation
5   Department within the meaning of California Penal Code §830.1 and am currently assigned
6   as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) Imperial
7   County District Office. In connection with my official DEA duties, I investigate criminal
8   violations of federal drug laws and related offenses, including violations of Title 21, United
9   States Code, 801 et seq. and the Federal Controlled Substance Act. During my career, I
10  have received specialized training in narcotics investigations from state and federal law
11  enforcement agencies such as the California Department of Justice (CA DOJ) Bureau of
12  Narcotic Enforcement (BNE). I previously conducted narcotics investigations for
13  approximately 8 years with the Imperial Valley Street Interdiction Team (Street level
14  narcotics investigations unit) and the Imperial Valley Narcotics Task Force (Mid-level
15  narcotics investigations). I have conducted investigations and/or participated in
16  investigations (including a state wiretap investigation) related to the unlawful importation,
17  possession with intent to distribute, and distribution of controlled substances, and
18  conspiracies associated with criminal narcotics offenses, in violation of California Health
19  and Safety Code sections 11351, 11352, and Penal Code section 182(a) (1). In
20  conducting/participating in these investigations, I have used a variety of investigative
21  techniques and resources, including physical and electronic surveillance and various types
22  of informants and cooperating sources.

23  4.   Through my training, experience, and interaction with experienced agents,
24  and other narcotics investigators, I have become familiar with the methods employed by
25  narcotics traffickers in general, and large Mexico-based Drug Trafficking Organizations
26  (DTO) in particular, to smuggle, safeguard, and distribute narcotics, and to collect and
27  launder narcotics-related proceeds. I have also received approximately 80 hours of
28  specialized training in drug and alcohol recognition of people who are under the influence

2

of central nervous system stimulants, central nervous system depressants, opiates, hallucinogens, marijuana, PCP, inhalants and alcohol. Prior to being assigned to the DEA Task Force on January of 2019, I was assigned to the gang suppression unit with the Imperial County Narcotic's Task Force for approximately 2 years. I have attended an 8 hour Street Enforcement gang training with the San Diego Police Department and completed approximately 80 hours of gang training. I have special training in search warrant preparation, arrest warrants, formal probation searches, parole searches, K-9 training (Certified 240hrs) and entry training. I began my employment with Imperial County Probation Department as a Juvenile Hall Detention Officer, where I became familiar with county-wide criminal street gangs such as: North Side Centro-NSC, East Side Centro-ESC, West Side Centro-WSC, MLS-Mexicali Locos Surenos, East Side Brole-ESB, Proyetos-PYS, Chicali, Home of Surenos-HOS, Ghost Town Locos-GTL, and Kennedy Gardens-KG's.

5.     As a probation officer, I have supervised probation caseloads that included active gang members which made me aware of their rivalries and criminal activities within the county of Imperial. I have personally arrested in excess of 200 suspects for probation violations, property crimes and narcotic related crimes.  I have personally seized, processed, and field tested most of the major street narcotics in their various forms such as heroin, methamphetamine, marijuana, cocaine, PCP, and many abused pharmaceuticals. In addition, I have received in excess of 100 hours of formal in-service training in virtually all aspects of the field of narcotics law enforcement from organizations such as: California Department of Justice, California Narcotics Officer Association, Imperial County Narcotics Task Force, Imperial Valley Street Interdiction Team and the Imperial County Narcotics Task Force Gang Unit.

6.     In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal.

7.     I am aware that it is common practice for drug traffickers to work in concert utilizing cellular telephones to maintain and store communications and related items with co-conspirators in order to further their criminal activities.  A common tactic utilized by narcotics traffickers is to transport controlled substances within the United States by concealing the controlled substances in vehicles that travel within the United States, specifically, within Imperial County prior to distribution of the controlled substances.  With respect to the transportation and distribution of drugs in this manner, I am aware that drug traffickers in Mexico and the United States frequently communicate with the individuals responsible for transporting and distributing the controlled substances within the United States.  These communications can occur before, during and after the drugs are transported and distributed within the United States.  For example, prior to the transportation, drug traffickers frequently communicate with the driver regarding arrangements and preparation for the drug transportation.     When the transportation is underway, drug traffickers frequently communicate with the driver to remotely monitor the progress of the drugs, provide instructions to the driver and warn accomplices about law enforcement activity.  When the drugs have been transported further into the United States, drug traffickers may communicate with the courier or driver to provide further instructions regarding the transportation of the drugs for distribution within the United States.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone and computer-related evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, Text Now, social networking messages, and videos reflecting co-conspirators or illegal activity. I am also aware that cellular telephones (including their SIM card(s))  can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and

text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.   On December 15, 2020, at approximately 4:30 p.m., Imperial County Sheriff's Office (ICSO) Deputy J. Caloca conducted a traffic stop on a red Chevy truck bearing California license plates for violation of Cal. Vehicle Code § 27600 (operating vehicle without mud flaps) at Farnsworth Road and McCabe Road, in El Centro, California. The

vehicle was occupied by two male adults, later identified as Julian MAGANA (MAGANA), the driver of the vehicle, and Francisco PEREGRINA (PEREGRINA).

10. Deputy Caloca stated that upon contact MAGANA and PEREGRINA appeared nervous. Deputy Caloca observed that MAGANA's hands were shaking when handing over the vehicle registration. While obtaining the vehicle documentation, MAGANA stated that they were coming from the Imperial Valley Mall. Deputy Caloca advised MAGANA that he had been traveling behind him from the City of Heber, California, which was in the opposite direction of the mall. MAGANA then changed his story and stated that they were coming from a friend's house. During the investigative questions, Deputy Caloca noticed two duffle bags in the back seat of the vehicle.

11. Deputy Caloca asked MAGANA what was in the duffle bags. MAGANA stated that the duffle bags contained gym clothes. Deputy Caloca related that he noticed that the duffle bags looked too squared and solid for them to contain gym clothes. Deputy Caloca asked MAGANA for consent to search the vehicle, at which point, MAGANA became excessively nervous and denied consent to search. Deputy Caloca advised MAGANA that a drug detection canine would be responding to the traffic stop to conduct a canine sniff of the vehicle. While waiting for the canine, MAGANA advised Deputy Caloca that he was consenting to the vehicle search. Prior to searching the vehicle, Deputy Caloca asked MAGANA if he had anything illegal like firearms or drugs. Deputy Caloca stated that MAGANA denied having firearms, but stated that he had drugs.

12. A subsequent search of the vehicle uncovered two duffle bags containing 40 packages wrapped in various plastic wrappings. Thirty-four (34) packages were found to contain suspected cocaine with a total gross weight of 40.056 kilograms (88.308 pounds). A random package from the 34 packages was field-tested by ICSO Deputy Caloca, which tested positive for cocaine. Six (6) packages were found to contain suspected heroin with a total gross weight of 6.826 kilograms (15.048 pounds). MAGANA and PEREGRINA were subsequently detained pending notification to the Drug Enforcement Administration (DEA) due to the amount of narcotics in the vehicle.

13.     At approximately 5:30 p.m., ICSO dispatch contacted DEA. Task Force Officer (TFO) Andy Mange and TFO Juan Lopez responded to the scene of the traffic stop and acquired the investigation. Once at the Imperial County District Office, Special Agent Sean Mann test one of the six packages, which tested positive for suspected heroin. MAGANA was advised of his Miranda rights. MAGANA stated that he understood his rights and was willing to answer questions without an attorney present. MAGANA related that they had picked up the drugs and were enroute to deliver the drugs to a subject. MAGANA acknowledged that the duffle bags contained drugs, but denied knowing how much or the type of drugs. In reference to $2,000 dollars cash that were found in a sun-glass case, MAGANA stated that half of the currency belonged to him and the other half to PEREGRINA. When asked if the currency was their payment to deliver the drugs, MAGANA refused to answer. MAGANA also reported to be unemployed and to have agreed to transport and deliver the narcotics due to financial difficulties. MAGANA concluded by stating that PEREGRINA had knowledge of the drugs in the vehicle.

14.     Target Device #1 was found in the cup holder next to the front passenger seat where PEREGRINA was sitting during the traffic stop. During the interview, PEREGRINA claimed ownership of the Target Device and provided agents with Target Device's phone number (760-492-0145), but refused to consent to search the Target Device #1. Target Device #2 was found on MAGANA's person and was seized at the time of arrest. During the interview, MAGANA claimed ownership of the Target Device and provided agents with the Target Device's phone number (760-675-5901), but refused to consent to a search of Target Device #2.

15.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using

the Target Device to communicate with others to purchase illicit narcotics. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on November 16, 2020, up to and including December 16, 2020, the day of MAGANA's and PEREGRINA's arrest.

## METHODOLOGY

16.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic

data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.  With regard to electronic storage devices, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date this warrant is signed, absent further application to this court.  Moreover, all forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17.    Following the issuance of this warrant, I will collect the Target Device and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19.    Law enforcement has not previously attempted to obtain the evidence sought by this warrant.  Consent was not given.

// 

// 

//

1

## CONCLUSION

2      20.    Based on the facts and information set forth above, I submit there is probable

3  cause to believe that a search of the Target Device will yield evidence of Defendant's

4  violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request

5  that the Court issue a warrant authorizing law enforcement to search the item described in

6  Attachment A and seize the items listed in Attachment B using the above-described

7  methodology.

8      I swear the foregoing is true and correct to the best of my knowledge and belief.

9

10

11                                    Task Force Officer Andy Mange
                                     Drug Enforcement Administration
12

13      Attested to by the applicant in accordance with the requirements of Fed. R. Crim.

14  P. 4.1 by telephone on this __29__ day of April, 2021.

15

16

17  HON. RUTH BERMUDEZ MONTENEGRO
    UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Black iPhone Cellular Telephone (Red/Black Case)
>
> Phone Number: 760-492-0145
>
> IMEI: Unknown
>
> ("Target Device #1")

> One Gold/Black iPhone Cellular Telephone (Clear Case)
>
> Phone Number: 760-675-5901
>
> IMEI: Unknown
>
> ("Target Device #2")

The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 16, 2020, up to and including December 16, 2020:

    a.    tending to indicate efforts to transport and distribute controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the transportation and distribution of controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances, or some other federally controlled substance, within the United States and destinations beyond;

    d.    tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.

# EXHIBIT 1

## NOT FOR PUBLIC VIEW

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>One Black iPhone Cellular Telephone (Red/Black<br>Case)<br>Phone Number: 760-492-0145<br>IMEI: Unknown | )<br>)<br>)<br>)<br>)<br>) |

Case No.   20MJI0088

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____01/7/2021_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____HON. RUTH BERMUDEZ MONTENEGRO_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued: _____12/23/2020  3:07 pm_____

_____
*Judge's signature*

City and state:   El Centro, California

HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Black iPhone Cellular Telephone (Red/Black Case)
>
> Phone Number: 760-492-0145
>
> IMEI: Unknown
>
> ("Target Device #1")

The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 16, 2020, up to and including December 16, 2020:

a.  tending to indicate efforts to transport and distribute controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances, or some other federally controlled substance, within the United States and destinations beyond;

d.  tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.

AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

DEC 2 3 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

One Black iPhone Cellular Telephone (Red/Black Case)
Phone Number: 760-492-0145
IMEI: Unknown

)
)
)
)
)
)

Case No.   2 0 M J 1 0 0 8 8

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 and 846 | Possession of a Controlled Substance With Intent to Distribute; Conspiracy to Commit Same |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Task Force Officer Andy Mange, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Andy Mange*
Applicant's  signature

Task Force Officer Andy Mange, DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _12/23/2020_

City and state:  El Centro, California

*Ruth Bermudez Montenegro*
Judge's signature

HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
Printed name and title

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>One Black iPhone Cellular Telephone (Red/Black Case)
>
>Phone Number: 760-492-0145
>
>IMEI: Unknown
>
>("Target Device #1")

The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 16, 2020, up to and including December 16, 2020:

a.   tending to indicate efforts to transport and distribute controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances, or some other federally controlled substance, within the United States and destinations beyond;

d.   tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, Task Force Officer Andy Mange, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

One Black iPhone Cellular Telephone (Red/Black Case)

Phone Number: 760-492-0145

IMEI: Unknown

("Target Device #1")

One Gold/Black iPhone Cellular Telephone (Clear Case)

Phone Number: 760-675-5901

IMEI: Unknown

("Target Device #2")

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B.   The requested warrant relates to the investigation and prosecution of Julian MAGANA and Francisco PEREGRINA ("Defendants") for possession with intent to distribute approximately 40.056 kilograms (88.308 pounds), of a mixture and substance containing a detectable amount of cocaine and 6.826 kilograms (15.048 pounds) of a mixture and substance containing a detectable amount of heroin. The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.     I am a sworn full-time Probation Officer with the Imperial County Probation Department within the meaning of California Penal Code §830.1 and am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) Imperial County District Office. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. During my career, I have received specialized training in narcotics investigations from state and federal law enforcement agencies such as the California Department of Justice (CA DOJ) Bureau of Narcotic Enforcement (BNE). I previously conducted narcotics investigations for approximately 8 years with the Imperial Valley Street Interdiction Team (Street level narcotics investigations unit) and the Imperial Valley Narcotics Task Force (Mid-level narcotics investigations).   I have conducted investigations and/or participated in investigations (including a state wiretap investigation) related to the unlawful importation, possession with intent to distribute, and distribution of controlled substances, and conspiracies associated with criminal narcotics offenses, in violation of California Health and Safety Code sections 11351, 11352, and Penal Code section 182(a) (1).   In conducting/participating in these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance and various types of informants and cooperating sources.

4.     Through my training, experience, and interaction with experienced agents, and other narcotics investigators, I have become familiar with the methods employed by narcotics traffickers in general, and large Mexico-based Drug Trafficking Organizations (DTO) in particular, to smuggle, safeguard, and distribute narcotics, and to collect and launder narcotics-related proceeds.   I have also received approximately 80 hours of specialized training in drug and alcohol recognition of people who are under the influence of central nervous system stimulants, central nervous system depressants, opiates, hallucinogens, marijuana, PCP, inhalants and alcohol. Prior to being assigned to the DEA

2

1   Task Force on January of 2019, I was assigned to the gang suppression unit with the
2   Imperial County Narcotic's Task Force for approximately 2 years. I have attended an 8
3   hour Street Enforcement gang training with the San Diego Police Department and
4   completed approximately 80 hours of gang training. I have special training in search
5   warrant preparation, arrest warrants, formal probation searches, parole searches, K-9
6   training (Certified 240hrs) and entry training. I began my employment with Imperial
7   County Probation Department as a Juvenile Hall Detention Officer, where I became
8   familiar with county-wide criminal street gangs such as: North Side Centro-NSC, East Side
9   Centro-ESC, West Side Centro-WSC, MLS-Mexicali Locos Surenos, East Side Brole-
10  ESB, Proyetos-PYS, Chicali, Home of Surenos-HOS, Ghost Town Locos-GTL, and
11  Kennedy Gardens-KG's.
12      5.      As a probation officer, I have supervised probation caseloads that included
13  active gang members which made me aware of their rivalries and criminal activities within
14  the county of Imperial. I have personally arrested in excess of 200 suspects for probation
15  violations, property crimes and narcotic related crimes.  I have personally seized,
16  processed, and field tested most of the major street narcotics in their various forms such as
17  heroin, methamphetamine, marijuana, cocaine, PCP, and many abused pharmaceuticals. In
18  addition, I have received in excess of 100 hours of formal in-service training in virtually
19  all aspects of the field of narcotics law enforcement from organizations such as: California
20  Department of Justice, California Narcotics Officer Association, Imperial County
21  Narcotics Task Force, Imperial Valley Street Interdiction Team and the Imperial County
22  Narcotics Task Force Gang Unit.
23      6.      In connection with my official DEA duties, I investigate criminal violations of
24  federal drug laws and related offenses, including violations of Title 21, United States Code,
25  801 et seq. and the Federal Controlled Substance Act. I have received training, both formal
26  and informal.
27      7.      I am aware that it is common practice for drug traffickers to work in concert
28  utilizing cellular telephones to maintain and store communications and related items with

3

1  co-conspirators in order to further their criminal activities. A common tactic utilized by
2  narcotics traffickers is to transport controlled substances within the United States by
3  concealing the controlled substances in vehicles that travel within the United States,
4  specifically, within Imperial County prior to distribution of the controlled substances. With
5  respect to the transportation and distribution of drugs in this manner, I am aware that drug
6  traffickers in Mexico and the United States frequently communicate with the individuals
7  responsible for transporting and distributing the controlled substances within the United
8  States. These communications can occur before, during and after the drugs are transported
9  and distributed within the United States. For example, prior to the transportation, drug
10  traffickers frequently communicate with the driver regarding arrangements and preparation
11  for the drug transportation.    When the transportation is underway, drug traffickers
12  frequently communicate with the driver to remotely monitor the progress of the drugs,
13  provide instructions to the driver and warn accomplices about law enforcement activity.
14  When the drugs have been transported further into the United States, drug traffickers may
15  communicate with the courier or driver to provide further instructions regarding the
16  transportation of the drugs for distribution within the United States.

17      8.      Based upon my training, experience, and consultations with law enforcement
18  officers experienced in controlled substance investigations, and all the facts and opinions
19  set forth in this affidavit, I am aware that conspiracies involving distribution of controlled
20  substances generate many types of evidence including, but not limited to, cellular phone
21  and computer-related evidence such as voicemail messages referring to the arrangements
22  of payment, names and contact information for co-conspirators, photographs, text
23  messages, emails, messages from text messaging applications such as WhatsApp, Text
24  Now, social networking messages, and videos reflecting co-conspirators or illegal activity.
25  I am also aware that cellular telephones (including their SIM card(s)) can and often do
26  contain electronic evidence, including, for example, phone logs and contacts, voice and
27  text communications, and data, such as emails, text messages, chats and chat logs from
28  various third-party applications, photographs, audio files, videos, and location data. This

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.    On December 15, 2020, at approximately 4:30 p.m., Imperial County Sheriff's Office (ICSO) Deputy J. Caloca conducted a traffic stop on a red Chevy truck bearing California license plates for violation of Cal. Vehicle Code § 27600 (operating vehicle without mud flaps) at Farnsworth Road and McCabe Road, in El Centro, California. The vehicle was occupied by two male adults, later identified as Julian MAGANA (MAGANA), the driver of the vehicle, and Francisco PEREGRINA (PEREGRINA).

10.    Deputy Caloca stated that upon contact MAGANA and PEREGRINA appeared nervous. Deputy Caloca observed that MAGANA's hands were shaking when

5

1   handing over the vehicle registration. While obtaining the vehicle documentation,
2   MAGANA stated that they were coming from the Imperial Valley Mall. Deputy Caloca
3   advised MAGANA that he had been traveling behind him from the City of Heber,
4   California, which was in the opposite direction of the mall. MAGANA then changed his
5   story and stated that they were coming from a friend's house. During the investigative
6   questions, Deputy Caloca noticed two duffle bags in the back seat of the vehicle.

7        11.   Deputy Caloca asked MAGANA what was in the duffle bags. MAGANA
8   stated that the duffle bags contained gym clothes. Deputy Caloca related that he noticed
9   that the duffle bags looked too squared and solid for them to contain gym clothes. Deputy
10  Caloca asked MAGANA for consent to search the vehicle, at which point, MAGANA
11  became excessively nervous and denied consent to search.  Deputy Caloca advised
12  MAGANA that a drug detection canine would be responding to the traffic stop to conduct
13  a canine sniff of the vehicle. While waiting for the canine, MAGANA advised Deputy
14  Caloca that he was consenting to the vehicle search. Prior to searching the vehicle, Deputy
15  Caloca asked MAGANA if he had anything illegal like firearms or drugs. Deputy Caloca
16  stated that MAGANA denied having firearms, but stated that he had drugs.

17       12.   A subsequent search of the vehicle uncovered two duffle bags containing 40
18  packages wrapped in various plastic wrappings. Thirty-four (34) packages were found to
19  contain suspected cocaine with a total gross weight of 40.056 kilograms (88.308 pounds).
20  A random package from the 34 packages was field-tested by ICSO Deputy Caloca, which
21  tested positive for cocaine. Six (6) packages were found to contain suspected heroin with
22  a total gross weight of 6.826 kilograms (15.048 pounds).  MAGANA and PEREGRINA
23  were subsequently detained pending notification to the Drug Enforcement Administration
24  (DEA) due to the amount of narcotics in the vehicle.

25       13.   At approximately 5:30 p.m., ICSO dispatch contacted DEA. Task Force
26  Officer (TFO) Andy Mange and TFO Juan Lopez responded to the scene of the traffic stop
27  and acquired the investigation. Once at the Imperial County District Office, Special Agent
28  Sean Mann test one of the six packages, which tested positive for suspected heroin.

1  MAGANA was advised of his Miranda rights. MAGANA stated that he understood his
2  rights and was willing to answer questions without an attorney present. MAGANA related
3  that they had picked up the drugs and were enroute to deliver the drugs to a subject.
4  MAGANA acknowledged that the duffle bags contained drugs, but denied knowing how
5  much or the type of drugs. In reference to $2,000 dollars cash that were found in a sun-
6  glass case, MAGANA stated that half of the currency belonged to him and the other half
7  to PEREGRINA. When asked if the currency was their payment to deliver the drugs,
8  MAGANA refused to answer. MAGANA also reported to be unemployed and to have
9  agreed to transport and deliver the narcotics due to financial difficulties. MAGANA
10  concluded by stating that PEREGRINA had knowledge of the drugs in the vehicle.

11      14.    Target Device #1 was found in the cup holder next to the front passenger seat
12  where PEREGRINA was sitting during the traffic stop. During the interview,
13  PEREGRINA claimed ownership of Target Device #1 and provided agents with Target
14  Device #1's phone number (760-492-0145), but refused to consent to search Target Device
15  #1. Target Device #2 was found on MAGANA's person and was seized at the time of
16  arrest. During the interview, MAGANA claimed ownership of the Target Device and
17  provided agents with Target Device #2's phone number (760-675-5901), but refused to
18  consent to a search of Target Device #2.

19      15.    Based upon my experience and training, consultation with other law
20  enforcement officers experienced in narcotics trafficking investigations, and all the facts
21  and opinions set forth in this affidavit, I believe that telephone numbers, contact names,
22  electronic mail (email) addresses, appointment dates, messages, pictures and other digital
23  information are stored in the memory of the Target Device. In light of the above facts and
24  my experience and training, there is probable cause to believe that Defendant was using
25  the Target Device to communicate with others to purchase illicit narcotics. Further, in my
26  training and experience, narcotics traffickers may be involved in the planning and
27  coordination of a drug smuggling event in the days and weeks prior to an event. Co-
28  conspirators are also often unaware of a defendant's arrest and will continue to attempt to

communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on November 16, 2020, up to and including December 16, 2020, the day of MAGANA's and PEREGRINA's arrest.

**METHODOLOGY**

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer. With regard to electronic storage devices, identifying and extracting data

subject to seizure pursuant to this warrant may require a range of data analysis techniques, including tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date this warrant is signed, absent further application to this court. Moreover, all forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Following the issuance of this warrant, I will collect the Target Device and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19. Law enforcement has not previously attempted to obtain the evidence sought by this warrant. Consent was not given.

//
//
//
//
//
//
//

9

**CONCLUSION**

20.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Andy Mange*
_____
Task Force Officer Andy Mange
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this _23rd_ day of December, 2020.

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Black iPhone Cellular Telephone (Red/Black Case)
>
> Phone Number: 760-492-0145
>
> IMEI: Unknown
>
>  ("Target Device #1")

The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Gold/Black iPhone Cellular Telephone (Clear Case)
>
> Phone Number: 760-675-5901
>
> IMEI: Unknown
>
> ("Target Device #2")

The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 16, 2020, up to and including December 16, 2020:

a.  tending to indicate efforts to transport and distribute controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances, or some other federally controlled substance, within the United States and destinations beyond;

d.  tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.